Castner v. Styer et al.

JOSEPH CASTNER v. DAVID STYER AND ABRAHAM BRITTIN.

1. A return, by the sheriff, that, " by virtue of the writ of attachment, he attached a certain debt due to the said A., in the hands of the said B., &c., appraised at $5: 0," is a valid return.

2. As a general rule, it is well settled that the official return of process, by an officer charged with its service, is conclusive upon the parties to the process and upon their privies, and cannot be impeached collaterally.

3. Though the service of the writ be irregular, the judgment founded upon it is conclusive, and cannot be impeached collaterally, either by the defendant himself or by third parties.

4. The garnishee in attachment cannot, by plea to the writ of *scire facias* or to an action upon a judgment recovered against him, call in question the regularity of the proceedings in attachment, or controvert the sheriff's return, that the writ of attachment was duly served.

5. The fifth and sixth sections of the supplement to the act to regulate the practice of the courts of law, passed 28th February, 1820, (*Rev. Laws* 692) were intended to apply to the same subject matter, and should be construed to operate co-extensively.

6. By the common law, a return of *nihil* to two writs of *scire facias* was in all cases a valid service of the writ.

7. Since the passage of the act of the 14th March, 1806, entitled, " An act concerning writs of *scire facias*," no judgment could be rendered in a suit commenced by *scire facias* against the garnishee in attachment, or in any suit whatever commenced by *scire facias*, except upon an actual service or publication of the writ in the mode prescribed by statute.

8. Since the passage of that act, a judgment rendered against the garnishee, upon the return of *nihil* to two writs of *scire facias* is void, the court having no jurisdiction, actual or constructive, of the person of the defendant.

9. It is not a conclusive objection to a special plea, that the defence contained in it may be given in evidence under the general issue.

This was an action of debt upon a judgment recovered by the plaintiff against the defendants in the Middlesex Common Pleas, on the tenth day of December, 1839. The declaration was in the usual form against both defendants.

Styer did not appear to the suit or plead. Brittin, one of the defendants, on whom process was served, pleaded—first, *nul tiel record*, and secondly, the following plea :

And for a further plea in this behalf, by leave of the court here for this purpose first had and obtained, according to the form of the statute in such case made and provided, the said Abraham Brittin comes and says, that the said Joseph Cast-

ner ought not to have and maintain his aforesaid action against him, the said Abraham Brittin, impleaded as aforesaid, because, he says, that in the Inferior Court of Common Pleas in and for the county of Middlesex, there is now remaining the record of a supposed recovery against the said Abraham Brittin and David Styer by the said Joseph Castner, which said supposed record is as follows :

Joseph Castner *v.* David Styer and Abraham Brittin.—Pleas before the judges of the Inferior Court of Common Pleas in and for the county of Middlesex, in the state of New Jersey, of the term of September, in the year of our Lord one thousand eight hundred and thirty-nine. Witness Peter P. Runyon, esq., judge of the said court.

BOORAEM, *Clerk.*

Middlesex county, *ss.*—Joseph Castner puts in his place John Van Dyke, his attorney, against David Styer and Abraham Brittin, garnishees in attachment of a plea of debt on *scire facias,* Middlesex county, to wit : The state of New Jersey sent to the sheriff of the county of Middlesex a writ close in these words, that is to say : Middlesex county, *ss.*—The state of New Jersey to our sheriff of our county of Middlesex, greeting : Whereas heretofore, to wit, of the term of June, in the year of our Lord eighteen hundred and thirty-eight, Joseph Castner did sue out of an Inferior Court of Common Pleas of the county of Middlesex a certain writ of attachment to our sheriff of our county of Middlesex directed, whereby the said sheriff was commanded to attach the rights and credits, moneys and effects, goods and chattels, lands and tenements, of David Smith, in said county, so that the said David Smith might be and appear before the judges of the said Inferior Court of Common Pleas of the said county of Middlesex, at New Brunswick, on the second Tuesday of September, then next, to answer the said Joseph Castner, in the sum of one hundred and fifteen dollars, of a plea of trespass on the case. And whereas the said sheriff of the said county of Middlesex did, on the said second Tuesday of September aforesaid, make return to the judges of our said court, that, by virtue of the

said writ to him directed, he had attached a certain debt due to the said David Smith, in the hands of David Styer and Abraham Brittin, appraised at five hundred dollars, as by the said writ of attachment, and return therewith made, duly affiled in the office of the clerk of our said court, may more fully and at large appear. And whereas, on the said second Tuesday of September, in the year aforesaid, agreeably to the statute in such case made and provided, auditors were appointed by the said court to audit and adjust the demands of the said Joseph Castner and others of the creditors of the said David Smith as might apply for that purpose. And whereas the said auditors, by their report, bearing date on the twenty-first day of March, eighteen hundred and thirty-nine, and made to the said court in the term of March, in the same year, did certify and report to the said court that, on the day of the date of the said report, there was due to the said Joseph Castner the sum of sixty-seven dollars and seventy-six cents; and to John T. Hoagland eight dollars and seventy-five cents; to Samuel Coleman twenty-four dollars and eighty-nine cents; to John Crokie twenty-one dollars twenty-five cents; and to John D. Martin one dollar and fifty cents, and that no other creditor had applied to them to audit and adjust his demand, as by the said report, duly affiled, may more fully appear. And whereas such proceedings were had upon the said writ of attachment that judgment upon the said report hath in due form of law been entered of the term of March of the said court, of the year eighteen hundred and thirty-nine, against the said David Smith by default, with costs, as appears to us of record: and now, on behalf of the said Joseph Castner, we have been informed, that although judgment be therefor given, yet execution thereof still remains to be made, and he has humbly besought us to provide a proper remedy in this behalf, we, being willing that what is right and just should be done on this occasion, do command you, that you cause to be made known to the said David Styer and Abraham Brittin that they be and appear before the judges of the Inferior Court of Common Pleas at New Brunswick, in said county of Middlesex, on the first Tuesday in June next, to show cause, if any they

have, why the said Joseph Castner should not have execution of the money aforesaid, due from the said David Styer and Abraham Brittin to the said David Smith, in their hands, according to the statute in such case made and provided, if they should be free so to do ; and further to do and receive what our said court shall then and there consider concerning them in this behalf: and have then and there this writ. Witness Peter P. Runyon, esquire, judge of our said court of New Brunswick aforesaid, the second Tuesday of March, in the year of our Lord eighteen hundred and thirty-nine.

JOHN VAN DYKE, *Attorney*.    N. BOORAEM, *Clerk*.

On which day, before the judges of the said the Inferior Court of Common Pleas aforesaid, at New Brunswick aforesaid, came the said Joseph Castner, by John Van Dyke, his attorney ; and the sheriff, to wit, Abraham W. Brown, esquire, sheriff of the county of Middlesex aforesaid, thereupon returned to the said judge, that the said David Styer and Abraham Brittin have not, nor hath either of them, any thing in the bailiwick of the said sheriff where or by which he can give them, or either of them, notice, as by the said writ he is commanded ; nor are they, the said David Styer and Abraham Brittin, nor either of them, found in the same : and the said David Styer and Abraham Brittin came not, nor does either of them come. Wherefore, as before it is commanded to the sheriff aforesaid, that he cause to be made known to the said David Styer and Abraham Brittin that they be and appear before the judges of the said Inferior Court of Common Pleas at New Brunswick aforesaid, in the said county of Middlesex, on the fourth Tuesday of September next, to show, in form aforesaid, why, &c., and further, &c., the same day is given to the said Joseph Castner here, &c. At which last mentioned day, before the said judges, at New Brunswick, aforesaid, comes the said Joseph Castner, by his attorney aforesaid ; and the said sheriff of the said county of Middlesex, as before returned, that said David Styer and Abraham Brittin have not, nor hath either of them, anything in the bailiwick of the said sheriff where or by which he can give them, or either of them, notice, as by the said last mentioned writ he is commanded ; nor

are they, the said David Styer and Abraham Brittin, nor either of them, found in the same: and the said David Styer and Abraham Brittin, although on the same day solemnly summoned, come not, nor *do* either of them come, but make default; therefore the said Joseph Castner ought to have execution against the said David Styer and Abraham Brittin of the money so as aforesaid due by them to the said Smith, and in their hands as aforesaid. But because it is unknown to the judge of our said Inferior Court of Common Pleas here the amount of the debt due from the said David Styer and Abraham Brittin to the said David Smith, as aforesaid and in their hands, as aforesaid, the sheriff of the county of Middlesex is commanded, that, by the oaths or affirmations of twelve good and lawful men of his bailiwick, he diligently inquire the amount of the debt due from the said David Styer and Abraham Brittin to the said David Smith, and that he send the inquisition, which he shall take thereon, to the judges of the Inferior Court of Common Pleas at New Brunswick aforesaid, in the said county of Middlesex, on the second Tuesday of December next, under his seal and the seals of those by whose oaths he shall take that inquisition, together with the writ in that behalf directed. The same day is given to the said Joseph Castner, at the same place. At which last mentioned day, before the judges aforesaid, at New Brunswick aforesaid, comes the said Joseph Castner, by his attorney aforesaid; and the said sheriff of the said county of Middlesex, to wit, James M. Brewster, esquire, now here, returns a certain inquisition indented, taken at the house of Henry Perrine, in the city of New Brunswick, in the said county of Middlesex, on Friday, the sixth day of December, in the year of our Lord one thousand eight hundred and thirty-nine, before him, by the oath of twelve good and lawful men of his bailiwick, by which it is found that the said David Styer and Abraham Brittin, in the said writ named, are indebted to the said David Smith, in the said writ named, in and to the sum of one hundred and eighty dollars and seventy-eight cents. Therefore it is considered that the said Joseph Castner do recover against the said David Styer and Abraham Brittin the said sum of one hundred and

eighty dollars and seventy-eight cents, by the said inquisition above found, and also thirty-six dollars and thirty-five cents for his costs and charges, by the said judges here adjudged of increase to the said Joseph Castner, and with his assent; which said sum of money, costs and charges, in the whole amount to two hundred and seventeen dollars and thirteen cents. And the said David Styer and Abraham Brittin, in mercy, &c. Judgment signed December 14th, 1839.

PETER P. RUNYON, <em>Judge.</em>

And the said Abraham Brittin in fact further saith, that there is not remaining of record in the said Inferior Court of Common Pleas in and for the county of Middlesex, in the state of New Jersey, any other record of any recovery, by the judgment and consideration of the said court, against the said Abraham Brittin and David Styer by the said Joseph Castner, than the said record of the supposed recovery above set forth; and that the record of the supposed recovery, above set forth, is the same record mentioned and set forth in the said declaration of the said plaintiff. And the said defendant in fact further saith, that he, the said Abraham Brittin, on the first day of January, in the year eighteen hundred and thirty-eight, was a resident, and from thence hath been resident, in the township of Chatham, in the county of Morris, and state of New Jersey, and that the said writ of attachment, in the said supposed recovery above set forth, mentioned as having been sued out of the said Inferior Court of Common Pleas of the county of Middlesex by the said Joseph Castner against the said David Smith, returnable in the said court on the second Tuesday of September, in the year eighteen hundred and thirty-nine, was not by the said sheriff of the county of Middlesex, to whom the same was directed and delivered before the return thereof, served by the said sheriff upon him, the said Abraham Brittin, in person; and that the said sheriff did not, after he received said writ, and before the return thereof, go to the house of the said Abraham Brittin, and then and there declare, in the presence of one credible person at least, that he attached the rights and credits, moneys and effects, goods and chattels, of the said David Smith, at the suit of the

plaintiff in said writ named. And the said Abraham Brittin in fact further saith, that he, the said Abraham Brittin, had not, prior to the entry of the said supposed recovery against him in the said Inferior Court of Common Pleas of the county of Middlesex, herein before set forth, any notice of the said writ of attachment in favor of the said Joseph Castner against the said David Smith, therein mentioned, and this he, the said Abraham Brittin, is ready to verify ; wherefore he prays judgment whether the said Joseph Castner ought to maintain his aforesaid action thereof against him.

The defendant pleaded, thirdly, the following plea

And for a further plea in this behalf, by leave of the court here, for this purpose first had and obtained, according to the form of the statute in such case made and provided, the said Abraham Brittin comes, and says, that the said Joseph Castner ought not to have and maintain his aforesaid action against him, the said Abraham Brittin, impleaded as aforesaid, because he says that, in the Inferior Court of Common Pleas in and for the county of Middlesex, there is now remaining the record of a supposed recovery against the said Abraham Brittin and David Styer by the said Joseph Castner, which said supposed record is as follows : [Here the plea sets forth the judgment record, as in the second plea above.] And the said Abraham in fact further saith, that there is not remaining of record in the said Inferior Court of Common Pleas in and for the county of Middlesex, in the state of New Jersey, any other record of any recovery by the judgment and consideration of the said court against the said Abraham Brittin and David Styer by the said Joseph Castner, than the said record of the supposed recovery above set forth, and that the record of the recovery above set forth is the same record mentioned and set forth in the said plaintiff's declaration.

And the said Abraham Brittin in fact further saith, that on the first day of March, in the year eighteen hundred and thirty, he, the said Abraham Brittin, was resident in his dwelling house with his family in the township of Chatham, in the county of Morris, and the state of New Jersey, and from thence hitherto has so there resided, and during all the time last aforesaid the

Castner v. Styer et al.

said Joseph well knew that he, the said Abraham Brittin, there resided; and during all the time last aforesaid there were newspapers printed at Morristown, in the said county of Morris, which was nearest the residence of the said Abraham Brittin; and during all the time last aforesaid the said Joseph Castner could have conveniently ascertained that the said newspapers were so printed at Morristown aforesaid; yet the said Abraham Brittin in fact further saith, that neither of the said several writs of *scire facias*, in the record of the said supposed recovery above set forth mentioned and described, was at any time before the said tenth day of December, in the year eighteen hundred and thirty-nine, published four successive weeks in a newspaper printed in the county of Morris and state of New Jersey, or in any other newspaper printed in that state; and this he, the said Abraham, is ready to verify, wherefore he prays judgment whether the said Joseph Castner ought to have and maintain his aforesaid action thereof against him, the said Abraham.

To the first plea, the plaintiff filed a replication joining issue, &c., and filed special demurrers to the second and third pleas, and assigned, as causes of demurrer to the second plea—

*First.* That the said last mentioned plea, in manner and form as the same is above pleaded, amounts to the general issue, and tends to great and unnecessary prolixity of pleading.

*Secondly.* And, also, that the said last mentioned plea consists altogether of matter of law, upon which no apt or material issue can be taken

*Thirdly.* And, also, that the said last mentioned plea contains several and distinct matters therein and thereby set up and alleged by way of defence.

*Fourthly.* And, also, that the said plaintiff cannot take or offer any certain issue upon the said last mentioned plea.

*Fifthly.* And, also, that the said last mentioned plea sets up the mere practice of the court by way of defence, and attempts to put the same in issue.

*Sixthly.* And, also, that the said last mentioned plea is insensible and contradictory, and the meaning thereof uncertain and obscure.

Castner v. Styer et al.

And, also, that the said second plea is in other respects uncertain, informal, and insufficient, &c.

The causes of demurrer assigned to the third plea are the same as those to the second plea, with the exception of the sixth cause, which is omitted.

The defendant joined issue on the demurrers filed.

The cause was argued at November term, 1851, before the CHIEF JUSTICE and Justices NEVIUS and OGDEN.

*Schenck*, for plaintiff, in support of the demurrer.

1. The second plea is bad in substance. The pleader attempts to go behind the judgment in the original suit, and set up that the attachment was not regularly served on the garnishee. It is the judgment of a court of record having jurisdiction of the case. To an action on a judgment nothing can be pleaded which goes to defeat the judgment, and which might have been pleaded to the original action. 1 *Chit. Pl.* 486 ; 8 *John. R.* 77 ; 13 *Mass.* 443, 453 ; 12 *Mass.* 268, 269 ; 7 *Porter* 110 ; 15 *J. R.* 55 ; 6 *Pick.* 239.

The only exception is in the case of confessed judgments.

It is set forth in the record of the original judgment that the attachment was served and returned by the sheriff. The plea denies that fact, and thereby contradicts the record. There can be no averment in pleading against the truth or validity of the record. 2 *Saund. on P. Ev.* 608 ; 1 *Phil. Ev.* 506 ; 16 *John. R.* 65 ; *Peters' C. C. Rep.* 155 ; 1 *Stark. Ev.* 216, *note*.

2. The plea is evasive. It does not aver that no notice was served upon the co-defendant. That fact should be directly averred. 1 *Chit. Pl.* 540. If the writ was served on Styer alone, it was all the law required. 1 *Harr.* 248, *Schuyler* v. *McCrea*.

3. The plea attempts to put in issue matters of law. It impliedly admits that the writ was served on one of the defendants, and thus raises a question of law, whether the attachment was properly served. 10 *Peters* 473 ; 3 *Chit. Gen. Pr.* 277.

4. The plea attempts to put in issue the practice of the court. It raises a new question as to the manner of serving the writ. This is illegal. *Cherry* v. *Powell*, 1 *Dowl. & Ry.* 50 ; *Sandon* v. *Proctor*, 7 *Barn. & Cres.* 800.

5. The plea, as written, is insensible, and its meaning obscure.

The *third* plea is also bad in substance. It simply avers that neither of the writs of *scire facias* were published. To an action upon a judgment, the defendant must plead either *nul tiel record*, release, payment, or fraud. 1 *Chit. Pl.* 486; 8 *John. R.* 77; 16 *John. R.* 55; 7 *Porter* 110.

There is a distinction, in this respect, between judgments of the same state in which the action is brought and judgments of other states. 2 *Halst.* 303; 13 *Wend.* 407; 15 *John. R.* 121; 5 *John. R.* 41; 8 *John. R.* 90, 197; 13 *John. R.* 192.

The judgments of other states have been permitted to be impeached collaterally, but the practice has not been extended, to judgments recovered in the same state. 18 *Pick.* 393.

The remedy is by recourse to the court in which the judgment was recovered or by writ of error. The reason of a different rule, as applied to the judgments of another state, is, that the party is supposed to have no opportunity of relief in the ordinary course.

The law, as it stood when the writ of *scire facias* in this case was served, did not require writs of *scire facias* to be served personally, or by leaving a copy, or by advertising. There might have been a lawful service by two writs, returned "*nil.*" *Elmer's Dig.* 23, § 15. The defendants had thereby judicial and constructive notice of the suit. It was all the law required, it was a common law proceeding. 2 *Arch. Pr.* 99; 4 *Peters.* 475.

The plea does not deny that the writ was served, either in person or at the house of the defendant. 4 *Cowen* 292; 1 *Day's Cas. in Er.* 168.

The plea consists of mere matter of law. It is a negative pregnant. It merely avers that the writ was not published four weeks, but does not deny that it was published for a longer time. 1 *Chit. Pl.* 614; 2 *Peters* 163; 4 *Ib.* 471; 9 *Ib.* 8; 10 *Ib.* 449; 3 *Harr.* 73; 3 *Green* 224; 18 *Pick.* 393.

The plea also impeaches the judgment in the original action collaterally. 13 *Pick.* 380.

*Whelpley*, for the defendant.

Castner v. Styer et al.

The real question raised by the pleas is, whether a judgment against a garnishee in attachment, upon two returns of *nihil* to a writ of *scire facias*, is not a void judgment. It appears affirmatively by the record that the writs of *scire facias* were served on neither defendant, and that neither appeared, and that the writs were not published. It is admitted by the demurrer that the record is correctly set forth. There is sufficient, therefore, upon the record to show that the judgment is void.

If the garnishee in attachment do not appear, the judgment is *in rem*, not *in personam*. If he appear and plead, execution may issue against his person. But on a judgment by default against the garnishee, there can be no execution against his person. *Rev. Laws* 359, § 20.

The fifth section of the act of 1820 (*Rev. Laws* 359) was designed to sweep away the operation of the mere return of *nil* to the writ of *scire facias*.

The second plea does not contravene the record. If the court had not jurisdiction of the cause or of the person there is no record. The defendant, in an action upon the judgment, cannot set up an irregularity of the service of the process in the original suit, but he may set up that there was no service of process.

In the case of joint debtors, the service of an attachment upon one will not affect the other. The statute in relation to joint debtors (*Rev. Stat.* 802, § 3,) declares that they shall be answerable to *their creditors* separately for their debts, not to others. If sued, therefore, as garnishees, by persons not *their creditors*, both defendants must be served with process.

There is no distinction between the judgments of the same state and of other states, so far as the right to impeach them collaterally is involved. They both stand upon the same footing. 4 *Kent's Com.* (6th ed.) 250 ; 1 *New Hamp. R.* 242 ; 1 *Ohio R.* 264 ; 2 *Blackf.* 108 ; 2 *Verm. R.* 263 ; 6 *Wend.* 447 ; 4 *Cowen* 292 ; 6 *Pick.* 238.

The plea is in fact a mere plea of *nul tiel record*, giving the party notice of the ground of objection. 5 *Wend.* 148.

*Schenck*, in reply.

The statute prescribes the mode of serving the attachment.

Castner v. Styer et al.

the sheriff returns the fact of service. The plea is a flat contradiction of the record.   15 *T. R.* 55 ; 6 *Pick.* 239.

If service of an attachment upon one of two joint debtors is not valid, it follows that there can be no valid service of the writ where one of the defendants is out of the state.

All the cases cited for the plaintiff of avoiding judgments collaterally are cases upon foreign judgments. There is no case of a judgment thus avoided in the same state where the judgment was rendered.

The distinction is stated in the case of *Bissel* v. *Briggs*, 9 *Mass.* 462.

The opinion of the court was delivered by the CHIEF JUSTICE.

The second plea alleges that the writ of attachment, issued at the suit of Castner *v.* David Smith, (by virtue of which the debt was attached in the hands of these defendants, as garnishees,) was not served in the mode prescribed by law. The record of the judgment recites that the sheriff returned, that, " by virtue of the writ of attachment, he had attached a certain debt due to the said David Smith, in the hands of the said David Styer and Abraham Brittin, appraised at $500." This is a valid return, and shows a substantial service of the writ. *Thompson* v. *Eastburn*, 1 *Harr.* 100 ; *Welsh* v. *Blackwell*, 2 *Green* 344.

The plea avers that the sheriff did not comply with all the particulars prescribed by the statute, as to the mode of service. In fact the plea puts in issue both the fact of the service and the legality of the mode of service. Aside from all questions as to the form of the plea, it is vicious in substance.

As a general rule, it is well settled that the official return of process, by an officer charged with its service, is conclusive upon the parties to the process and upon their privies, and cannot be impeached collaterally. In regard to mesne process, the defendant in the writ is estopped by the return of the officer from denying the truth of the return, or from showing that the requisites of the law were not complied with, as to the mode of service, even during the pendency of the suit. *Slayton* v. *The*

*Inhabitants of Chester*, 4 *Mass.* 478; 3 *Cowen's Phil. on Ev.* 1087, *note* 741.

And though the service of the writ be in point of fact irregular, the judgment founded upon it is conclusive, and cannot be impeached collaterally, either by the defendant himself or by third parties. In *Case* v. *Redfield*, 7 *Wend.* 398, the defendant below offered to impeach a judgment in attachment, because a copy of the attachment was not left at the dwelling house or last place of abode of the defendant. The court say the evidence was properly excluded. The attachment was returned regularly served ; and it is the return which gives jurisdiction to the justice, and authorizes him to proceed. If a constable make a false return upon process, the judgment cannot be avoided on that ground. He is responsible in an action for the false return ; but the return itself, whether true or false, gives jurisdiction to the magistrate, and authorizes him to proceed.

In *Bean* v. *Parker*, 17 *Mass.* 600, (which was an action against bail) the defendants, in pleading, denied that the defendant in the original action, for whom they had been bail, had been arrested. On a demurrer to these pleas, Parker, C. J., in delivering the opinion of the court, said, " We think the third and fourth pleas cannot be sustained, because they deny the return of the officer upon the writ, which is matter of record, and is conclusive between these parties. The arrest could not be proved but by the return of the officer, nor can it be disproved by parol when it appears by the return to have been made." " It has often been decided that a legal and sufficient return by an officer upon a precept cannot be controverted, except in a suit against the officer himself or his superior."

In *Bott* v. *Burnell*, 11 *Mass.* 165, Sewall, C. J., said, " The sheriff's return is conclusive as to the formal proceedings by the appraisers and himself, and is not to be controlled by other evidence."

In *Wilson* v. *The Executors of Hurst*, 1 *Peters' C. C.* 441, which was a *scire facias* to revive a judgment rendered against the testator in his lifetime, the defendants offered to show that

Castner v. Styer et al.

the defendant in the original action had been arrested under a *capias ad satisfaciendum*, and discharged from arrest by order of the plaintiff. The sheriff had returned the *ca. sa. non est inventus*, and the court held that the return could not be contradicted.

It may be urged that the garnishee in attachment is, in strictness, neither a party to the suit nor a privy, and, therefore, is not estopped by the sheriff's return. And it may be conceded, for the purpose of the argument, that if the defendant had appeared to the writ of *scire facias*, he might have shown that he had paid the debt before he received notice of the attachment, and, consequently, that he owed the defendant in attachment nothing. Yet, even if he had appeared to the *scire facias*, his only defence would have been, that he did not owe the defendant in attachment. He could not then have called in question the regularity of the proceedings in attachment, ( *Welsh* v. *Blackwell*, 2 *Green* 347,) much less can he do it now, when judgment has been rendered against him upon the *scire facias*, and there is no justice or propriety in permitting him to do it. The judgment in attachment is clearly conclusive against *Smith*, the defendant in attachment. In a suit by *him* to recover his debt from Styer and Brittin, they might plead the attachment in bar of the action, and the plaintiff would be concluded by it. But when the *plaintiff in attachment* calls upon them to pay the debt, they attempt to shield themselves from payment by an alleged illegality in the service of the attachment, and thus effectually avoid the payment of the debt to either party. If the garnishee in attachment can, in any case or for any purpose, contravene the sheriff's return, by showing that the writ of attachment was not served upon him, (upon which it is unnecessary here to decide) he cannot do it in this case, and for the purpose sought to be effected by this plea. In fact if the plea can be available at all, it can only be by impeaching the judgment; and that can never be done collaterally, even by third parties. The *second* plea is bad in substance, and the demurrer must be sustained.

The material question raised by the demurrer to the *third* plea is, whether by the law of this state, as it stood in 1839,

when these proceedings were commenced, the return of "*nihil*" to two writs of *scire facias* was a valid service of the writ upon a garnishee in attachment? It is admitted that, at the time of the service of the writ, the defendant was a citizen of this state, a resident within its jurisdiction, a subject of its laws. The question will therefore be considered solely in reference to the judgments of this state, by virtue of whose laws this was pronounced, without reference to the points which have been agitated touching the judgments of sister states, under the provision of the federal constitution.

By the common law, a return of "*nihil*" to two writs of *scire facias* was in all cases a valid service of the writ. 2 *Salk.* 599 ; 2 *Sellon's Pr.* 196.

By the attachment act, as it stood when these proceedings were commenced, (*Rev. Laws* 359, § 20, ) it was enacted, that "if the garnishee on being returned *warned* on the *scire facias*, or on two writs of *scire facias*, it be returned that he had nothing whereby to be summoned, or could not be found in the county, shall not appear, &c., then judgment shall be entered against such garnishee by default." By the supplement to "the act to regulate the practice of the courts of law," passed on the 28th of February, 1820, (*Rev. Laws* 692, § 5,) it is enacted, that "henceforth no judgment shall be entered in any of the courts of record of this state, on suits which shall be commenced by writs of *scire facias* or execution issue on judgments attempted to be revived by *scire facias*, unless the sheriff, or other officer, to whom the writ of *scire facias* shall be directed, shall actually have served the same, either personally on the defendant, or by leaving a copy of the writ with some white person of the age of fourteen years, at his or her usual place of abode, at least six entire days before its return, or as directed in the next section of this act." The sixth section of the act provides, that whenever a writ of *scire facias* shall issue, either *to recover a forfeited recognisance or to revive a judgment*, if the defendant cannot be found by the sheriff or officer to whom the writ is directed, the plaintiff may proceed as if the writ had been served, provided the plaintiff first cause the writ to be published in the manner therein spe-

cified, or cause a copy of the writ to be served on the defendant, wherever found, at least twelve days before the return thereof. The fifth section, it will be observed, includes *all* writs sued out, either *at the commencement of a suit* or to revive a judgment. The sixth section, on the contrary, is limited in terms to writs of *scire facias* issued to *recover a forfeited recognisance* or to revive a judgment. Now a writ of *scire facias* to recover a forfeited recognisance is but one example of numerous writs of *scire facias* which issue at the commencement of a suit, so that, literally construed, the prohibition of the fifth section is much broader than the authority conferred by the sixth. The two sections, however, were indubitably intended to apply to the same subject matter, and should be construed to operate coëxtensively. Upon any other construction, there would be many cases in which no judgment on the writ of *scire facias* could possibly be recovered. The common law practice of proceeding would be taken away, and no new method provided by the statute. It is clearly incumbent, therefore, upon the court, in construing the statute, to reconcile the provisions of the two sections, and to apply them to the same subject matter. The only question must be, whether the general language of the 5th section is to be restrained by the provisions of the 6th, or whether the specific enumeration of the latter is to be enlarged by the more comprehensive phraseology of the former.

Viewing the act of 1820 as a mere supplement to the practice act, (as its title indicates it to be) in connection with the fact, that the writ of *scire facias* is most frequently used, either to recover forfeited recognisances or to revive judgments, it seems at first view not improbable that the legislature designed to abolish the common law practice in those cases alone, and did not intend to interfere with the practice upon special writs of *scire facias* authorized by statute. And this construction derives countenance from the fact, that, in the revision of 1820, the act in question stands upon the statute book side by side with at least two statutes expressly authorizing the return of *nihil* upon two writs of *scire facias* as a valid service of the writ. I refer to the twentieth section of the attachment

act (*Rev. Laws* 359) and to the third section of the supplement to the act concerning sheriffs (*Rev. Laws* 303). But a more careful examination of the language of the law, and of the history of legislation upon the subject, will show that this construction cannot be adopted.

The fifth and sixth sections of the act of 1820 had their origin in an act passed on the 14th of March, 1806, (*Pamph. Laws* 706, *cap.* 125). This act contains but two sections, substantially the same as the fifth and sixth sections of the act of 1820, excepting a change in the mode of publication introduced by the act of 28th November, 1809, (*Pamph. Laws* 215, *cap.* 59). The attachment act was passed in the year 1797. The supplement to the act concerning sheriffs, to which allusion has been made, was passed in 1796; so that, at the time of the passing of the act concerning writs of *scire facias*, the return of "*nihil*" upon two writs, when the defendant could not be found, was universally recognised, both at common law and by statute, as a valid service of the writ of *scire facias*. The title of the act of 1806 is "An act respecting writs of scire facias." The preamble recites, that "whereas, by the existing laws of this state, a writ of *scire facias* to revive a judgment, having been twice issued and returned by the sheriff or other officer to whom directed, *nihil*, or not served, is presumed to have amounted to a service of such writ, and *when a suit is commenced by writ of scire facias*, and the return thereon by the officer the same as above stated, a judgment is entered the same way as in actions commenced by other process, whereby undue advantage is frequently obtained over the parties not having due notice thereof." The evil designed to be remedied was the rendition of judgment or award of execution against defendants, without the actual service of process, whereby an undue advantage was obtained over the party not having due notice, an evil which resulted to the defendants in all writs of *scire facias* issued, either to commence a suit or to revive a judgment, and to none more strongly than to the garnishee in attachment. The language, moreover, as well of the preamble as of the first section of the act, expressly includes *all suits commenced by writ of scire facias*. A *scire*

*facias* to revive a judgment is but a continuation of the original action, and there are certain other writs of *scire facias* known to the common law (of which the writs of *scire facias quare executionem non* and *ad audiendum errores* may be mentioned as illustrations) which are not the commencement of a suit. Yet a *scire facias*, though not an *original*, but a *judicial* writ, is properly an action, and in the nature of a new original, and hence the issuing of the writ, though founded on a record, is properly regarded as the commencement of a suit.  *Attwood* v. *Burr*, 2 *Salk.* 603 ; *Grey* v. *Jones*, 2 *Wils.* 251 ; *Comber.* 455 ; 2 *Sellon's Prac.* 186 ; 2 *Arch. Prac.* 76 ; 2 *Bouvier's Law Dict.* " *Scire Facias.*"

Every writ whereto the defendant may plead, be it original or judicial, is in law an action.  1 *Inst.* 290, *C.*  In the case of *Earl* v. *Earl*, which was a proceeding commenced by special *scire facias* under the supplement to the act respecting sheriffs (*Rev. Laws* 303), this court held it to be an action, and governed by the same principles respecting bail in error as other personal actions.  All writs of *scire facias*, then, which can be regarded as the commencement of a suit, and upon which judgment may be rendered, (of which the *scire facias* against the garnishee in attachment is clearly one) are within the evil designed to be remedied by the act respecting writs of *scire facias*.  They are within not only the spirit, but the letter of the first section of the act, which declared that *no judgment* shall be rendered in any court or suits commenced by writs of *scire facias*, unless the writ be personally served.  This being the true construction of the fifth section of the act of 1820, the sixth section must, as has been said, be construed as applying to the same subject matter.  The sixth section, it may be added, is clearly remedial in its nature, and may therefore be liberally construed to advance the ends of justice.

Although these statutes continued in force down to the revision of 1846, a period of forty years, no judicial decision appears to have been made upon the point now under consideration.

The case of *Earl* v. *Earl*, which was repeatedly before this court and the Court of Errors, was originally commenced in

the Burlington pleas, by writ of *scire facias*, under the supplement to the act concerning sheriffs, already alluded to. After the first writ had been returned, that the defendant had nothing in the county whereby he could be summoned, and that he could not be found therein, the *scire facias* was published, under the provisions of the act of 1820, and that fact is spread upon the record. The *scire facias*, in that case, called upon the defendant in execution to show cause why land, levied upon by virtue of a writ of *scire facias* by a former sheriff, should not be sold to satisfy the execution. It was neither a *scire facias* to recover a forfeited recognisance, nor to revive a judgment, nor was it in the nature of either, and therefore clearly not within the letter of the sixth section of the act of 1820. This cause involved a large amount of property. It was contested with great earnestness at every stage of its progress. It was known that it would be so before the writ issued. The attorneys, upon both sides, were among the most skilful and experienced practitioners at the law. It may be said, without invidiousness, that in this department of professional labor, they had no superiors. They were both at the bar, and in practice when the act of 1806 was passed. And hence the fact, that the practice was adopted in that case without question under such circumstances, is strongly indicative of the true construction of the act of 1820.

In the case of *Welsh* v. *Blackwell* (reported in 2 *Green* 344), which was a writ of *scire facias* against a garnishee in attachment, upon the return of the writ at September term, 1832, as appears by the minutes of the court, the following rule was entered : " It appearing to the court that the defendant hath removed without the jurisdiction of this court, it is ordered, that the *scire facias* be published in the National Union, for the period prescribed by the statute in such case made and provided." At February term, 1832, the rule for publication was continued, and at May term, proof of publication having been filed, the plaintiff filed his declaration, and the defendant entered his appearance. This, too, was a contested case, but no exception was taken to the proceeding. The order of the court certainly has not the weight of a judi-

cial determination of the question, but the practice adopted serves to show the sentiments, both of the court and of the counsel, in regard to the true construction of the statute.

I am of opinion, therefore, that since the act of 1806, no judgment could have been rendered in a suit commenced by *scire facias* against the garnishee in attachment, or in any suit whatever commenced by *scire facias*, except upon an actual service or publication of the writ, in the mode prescribed by statute; and that, consequently a judgment rendered against the garnishee, upon the return of *nihil* to two writs of *scire facias*, is null and void. The writ was not served as prescribed by law, and the court had no jurisdiction, actual or constructive, of the person of the defendant.

The question still remains, what judgment can the court render upon these pleadings? The plaintiff's declaration is in due form. Judgment cannot be rendered against him on the ground of any defect in the declaration. The difficulty is disclosed by the defendant's plea. He sets out a record, which he alleges to be the one upon which action is brought, and pleads in avoidance of it. The plea is radically defective. The record shows that there were two writs of *scire facias* returned *nihil*, and the plea alleges merely that the *scire facias* was not *published*, as prescribed by the statute. But when the defendant has left the jurisdiction, or cannot be found to be served with the writ, the statute provides that the writ may either *be published*, or a *copy served on the defendant personally*, wherever he may be. The mere fact that the writ was not published, standing alone, is an immaterial averment. It may be true, and yet the writ may have been properly served. The plea should have gone farther, and denied the personal service of a copy. The court cannot, in the present state of the pleadings, give judgment for the defendant without affirming the validity of the defendant's plea. Judgment cannot be rendered against the plaintiff on the ground that the record set out by the defendant is radically defective. If the plea be held sufficient, the plaintiff may withdraw his demurrer and reply; and, by his replication, he may set out a record variant from that set out by the defendant, and a record valid upon its face. The court

cannot, therefore, at this stage of the pleadings, render judgment for the defendant upon the assumption that the suit is brought upon a void judgment. There must be judgment for the demurrant on the demurrer to the third plea, with leave to the defendant to amend his plea or plead anew, if he elect so to do.

There is nothing in the objection, urged upon the argument, that this plea amounts to the general issue, and, therefore, that it cannot be pleaded specially. Admitting that the defendant may avail himself of the objection under the general issue, it does not therefore follow that he may not plead it specially.

By his special plea, he does not set up that there is no such record as that declared upon. But he insists that the judgment contained in the record is null and void; and he may, by special plea, test the validity of that judgment

Let judgment be entered accordingly.

NEVIUS and OGDEN, Justices, concurred.

CITED in Van Doren v. Horton, 1 Dutch. 207; Boyd v. King, 7. Vr. 136.